## GARDINER v. MONTEGUT. *

### No. 16396.

Court of Appeal of Louisiana. Orleans.
June 14, 1937.

*Rehearing denied — So. —.

R. A. Tichenor, Sr., and Hubert M. Ansley, both of New Orleans, for appellant.

Wm. H. Talbot, of New Orleans, for appellee.

JANVIER, Judge.

Edwin S. Gardiner claims that from the 9th day of June, 1929, to and including the 9th day of April, 1931, he was employed by George Montegut as manager of the latter's motortruck transfer business at a salary of $100 per month and that salary for the last eight months of that period has not been paid to him. He admits that there are credits due by him to Montegut totaling $200, $150 of which represents a loan made to him and $50 of which represents cash paid to him—$25 on May 16, 1932, and $25 on May 26, 1932. He prays for judgment for the alleged balance of $600.

Montegut, in his answer, denied that the said Gardiner had been employed by him, but in his testimony conceded that he had given Gardiner employment ostensibly as manager of his business and had paid him $100 per month for a portion of that period, but maintains that he had done so purely out of friendship for Gardiner and not because of need for the latter's services, and contends that at the end of June, 1930, Gardiner, having acquired a small business of his own, he (Montegut) told him that he would not pay him any further salary but that he might remain in the premises and there conduct his own business.

In the court below there was judgment dismissing plaintiff's demand as in case of nonsuit and from this judgment he has appealed.

In this court Montegut has filed pleas of prescription of one and three years.

The prescription of one year is not applicable. If Gardiner was employed at all, it was in a clerical capacity. Under article 3538 of the Civil Code the prescription of three years is made applicable to claims for "the salaries of overseers, clerks, secretaries."

The last month for which salary is claimed by Gardiner terminated April 9, 1931, and citation was not served upon the defendant until May 14, 1935, so that considerably more than three years had elapsed between the time at which the final alleged salary payment became due and the day on which defendant was served with citation in this suit. But plaintiff, as an interruption of prescription, relies upon the fact that payments on account were made —one on May 16 and one on May 26, 1932. Defendant, maintaining that no interruption of prescription has taken place, contends that, since the salary of plaintiff became due from month to month, each monthly amount represented a separate claim, each of which prescribed three years from the day on which it was due; that the payments of May 16 and May 26, 1932, should be applied to the oldest accounts; and that, therefore, the claims for the final six months, which are the claims sued on, have prescribed, and prescription as to them has not been interrupted by the two said payments made on a different and earlier claim.

As supporting this rule, defendant relies upon several decisions of this and of the Supreme Court, all of which hold that, where salaries, or wages, or rents, are earned by the day, week, or month, the amount earned each day, or week, or month, represents a claim separate and distinct from each of the others.

In Sturgis v. Imperial Hotel (La.App.) 144 So. 268, 269, plaintiff sued for a balance alleged to be due her on wages earned

at the rate of $10 each week. Defendant pleaded prescription. Plaintiff met the plea of prescription by proof that certain payments had been made to her, and she contended that, if these payments should be imputed to the oldest of her several weekly claims, the only remaining claims would have been for wages, against which prescription had not run. The court held that "each and every weekly payment due plaintiff by defendants" represented a separate claim and that the imputation of the payments made to the oldest of the claims would leave the latest not affected by the prescription pleaded. Obviously, if the several claims could have been considered as merged into one and the payments could have been given the effect of interrupting prescription as to the whole claim, there would have been no necessity to resort to the imputation of the payments to the oldest of the claims, for, as a result of the interruption of prescription, all would still have been due.

In Salnave v. McDonough's Ex'r, 6 La. 357, the claims sued on were based in the main on balances alleged to be due on the rental or hire of slaves, some on a monthly and some on an annual basis. The suit was met by a plea of prescription. A payment had been made on account. The court considered each claim as a separate one and imputed the payments to the oldest. Here, again, it will be noted that the payment on account was not treated as having interrupted prescription on the claim as a whole—in other words, the claim was not treated as a whole, but remained divided into its several component parts.

In Cresap v. Winter, 14 La. 553, the Supreme Court considered a claim made up of monthly wages earned by an overseer on a plantation but not paid for six years. The defense was a plea of prescription. In answer to this plea the plaintiff contended "that the continuity of his services * * * [presented] an obstacle to the application of prescription." The court treated each monthly claim as separate and distinct from each of the others and held that, as to each, prescription had commenced to run from the time at which it had become due.

In Dewar v. Beirne Co. (Court of Appeal Parish of Orleans) 1 McGloin, 75, this court considered a case which cannot be distinguished. There plaintiff sued for "balance due for wages * * * at the rate of $1.50 per day". The evidence showed that certain payments had been made to him and it was contended that these payments had interrupted prescription as to the whole claim. The court said:

"It is sufficient to say that the payments made to plaintiff in this case did not operate such an interruption. Plaintiff was, employed for service by the day, and the amount due to him was not one obligation, but an accumulation or aggregation of obligations maturing from day to day, as each day's service was rendered, and the indebtedness for the service of each day constituted a separate and distinct obligation, prescribable when one year from the date upon which it had been earned had elapsed. The payment, therefore, of any number of such obligations, could not have the effect of interruption of the prescription of others which preceded or followed."

Thus, it is well established that where wages or salaries, or rents are earned on a periodical basis, the amount due for each period represents a claim separate and distinct from each of the others, and that, as to each, prescription commences to run from its due date unaffected by anything that may be done concerning any other similar claim for any other period.

Clearly, also, it is settled that payments, unless imputed by instruction or by agreement, must be applied to the oldest of the claims and not given any effect in so far as the other claims are concerned.

There is, however, one case which requires analysis if it is to be distinguished from the cases already cited. The conclusion reached in Nesom v. D'Armond, 13 La.Ann. 294, is properly and succinctly stated in the syllabus, which reads as follows:

"Where an obligation was to be paid in several installments, and all the installments were due when the debtor made a payment without directing on which installment the credit was to be given—Held: The payment must be deemed to have been made in part satisfaction of the whole debt and prescription on all the installments was thereby interrupted."

But there the sum due on the installments had originally been one debt, divided into three installments for convenience. The one debt had represented the purchase price of slaves bought at one sale. Here there was not one debt; there were several—each separate and distinct from each of the others—and there was no provision of

contract or of law which made all due upon the failure to pay one. There was nothing which may be likened unto the familiar acceleration clause in contracts of lease. The Supreme Court, in Kearney v. Fenerty, 185 La. 862, 171 So. 57, discussed the effect of article 2065, Civ.Code, concerning conjunctive obligations and held that, where there is a conjunctive obligation made up of several different items, each represents a separate claim and may be sued on separately, provided the entire obligation is not subject to an acceleration stipulation. The court distinguished the Kearney Case, in which it was held that, where there is an acceleration stipulation, all installments, by the acceleration, mature and become remerged into one obligation, from Brandagee v. Chamberlin et al., 2 Rob. 207, in which there was no such acceleration stipulation and where, because of the absence of such stipulation, each obligation was held to remain separate and distinct from all of the others. It is true that in the Nesom Case, in which the Supreme Court held that prescription as to all installments had been interrupted by payment on account, there is nothing to show that there was any acceleration stipulation under which all of the installments became due upon the failure to pay any one of them, but very obviously—unless that case is to be distinguished from the Kearney Case—the court in that case treated the three installments as one obligation and, therefore, must have found that, as a result of the original obligation, all could be made to mature upon the failure to pay any one, otherwise the result reached in the Kearney Case is in conflict with that reached in the Nesom Case.

It may be that, even in the absence of an acceleration stipulation, if the action of the parties has been such as to convert the separate, individual claims into one disputed whole, then payment on account would have the effect of interrupting prescription as to all. But the facts here do not show any such action on the part of the parties.

■ In the case at bar there was not one debt which had been divided into several installments. There were several distinct debts, each for salary for a different month. If, in the Nesom Case, the three notes had been given each for the separate purchase price of slaves bought at three separate and distinct times and at three separate and distinct sales, we entertain no doubt that a different result would have been reached and that the court would have held that payment on account should be imputed, in the absence of a stipulation, to the oldest of the debts. Thus, prescription would not have been interrupted as to the others.

Applying the two payments made to Gardiner to the oldest claim, they would have no effect upon the running of prescription on the later claims. It follows that the prescription of three years has not been interrupted.

■ The plea of prescription may be filed at any time, even in the appellate court. Code Prac. art. 902.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended to the extent that plaintiff's suit be and it is dismissed at his cost.

Amended; suit dismissed.

